SUPERNUS PHARMACEUTICALS, INC.,

Plaintiff,

v.

TWI PHARMACEUTICALS, INC. and
TWI INTERNATIONAL LLC ,

Defendants.

Civil Action No. 15-369 (RMB)

**CLERK'S OPINION
GRANTING IN PART AND
DENYING IN PART
PLAINTIFF'S MOTION
TO TAX COSTS**

This matter has come before the Clerk on the motion [Dkt. Entry 368] of Plaintiff
Supernus Pharmaceuticals, Inc. ("Plaintiff," "Supernus") to tax costs against Defendants TWi
Pharmaceuticals, Inc. and TWi International LLC (together, "TWi," "Defendants") pursuant to
Federal Rule of Civil Procedure 54(d) and Local Civil Rule 54.1, and to tax expert witness fees
pursuant to Fed. R. Civ. P. 26(b)(4)(E).

This Hatch-Waxman case, filed on January 16, 2015 [Dkt. Entry 1], concerned the
alleged infringement of patents held by Plaintiff for anti-epileptic, extended-release tablets
containing 150, 300 and 600 mg of oxcarbazepine, marketed as Oxtellar XR®: United States
Patent Nos. 7,722,898 ("the '898 patent"); 7,910,131 ("the '131 patent"); 8,617,600 ("the '600
patent"); and 8,821,930 ("the '930 patent"). Supernus alleged that Defendants' filing of an
Abbreviated New Drug Application ("ANDA") for approval by the United States Food & Drug
Administration ("FDA") to market its generic version of the Oxtellar XR® tablets prior to the
expiration of Supernus' patents constituted infringement of those patents. Defendants answered
with counterclaims of non-infringement and invalidity. [Dkt. Entry 13].

The case proceeded to a Markman hearing [Dkt. Entries 81, 85], through fact and expert discovery, including depositions in Taiwan, and in limine motions [Dkt. Entries 224-27], which were denied [Dkt. Entry 242].

Before trial, the parties stipulated to limiting the litigation to the '898, '131 and '930 patents, setting aside Plaintiff's third count of infringement of the '600 patent. [Dkt. Entry 198]. A four-day bench trial was held on April 3-6, 2017. [Dkt. Entries 249, 253-55]. The trial was followed by counsel's post-trial briefing, hyperlinked pursuant to the Court's directive. [Dkt. Entry 269].

On August 15, 2017, the Court issued its bench opinion [Dkt. Entries 329, 352], finding that all of the asserted claims of the patents-in-suit were not invalid and had been infringed. Accordingly, on August 28, 2017, final judgment was entered in favor of Plaintiff [Dkt. Entry 339], thereby setting the effective date of FDA approval of TWi's ANDA no earlier than the expiration date of the patents-in-suit and enjoining Defendants' commercial activity involving their ANDA product until such time. Also, Plaintiff's third count, claiming infringement of the '600 patent, was dismissed with prejudice.

TWi filed their notice of appeal to the United States Court of Appeals for the Federal Circuit on August 31, 2017 [Dkt. Entry 345] and that appeal remains pending.

On September 7, 2017, Supernus filed a motion for attorney's fees. [Dkt. Entry 348]. The Court denied Defendants' motion to stay Supernus' fee application. [Dkt. Entry 358]. It did, however, order bifurcation of the briefing of the motion, allowing Plaintiff to brief just entitlement to such fees, and not the requested amount, until after a determination of liability has been made. [Dkt. Entry 366]. That motion too remains pending. [Dkt. Entries 385, 395-97].

Supernus timely filed the motion to tax costs now before the Clerk on September 27, 2017. [Dkt. Entry 368]. Plaintiff later revised its bill of costs after deducting an erroneous $166.25 in copying charges. In its amended AO 133 form [Dkt. Entry 375-3], it seeks the costs of: filing ($400.00); service of summons and complaint ($353.60); printed and videotaped transcripts ($36,977.27); witnesses ($7,389.25); exemplification and copies ($70,041.31); and interpreters ($1,920.00). These costs are requested pursuant to Rule 54(d) and the allowable categories of 28 U.S.C. § 1920, discussed below. Supernus also lists on its amended AO 133 form as "Other costs" expert fees in the amount of $37,775.00, which it seeks pursuant to Fed. R. Civ. P. 26(b)(4)(E). Entries on the amended bill of costs total $154,856.43.[1]

TWi does not object to taxing the costs of filing, service, equipment rental or interpretation, but does contest the remaining costs and asserts that only $20,062.86 should be granted. [Dkt. Entry 373].

## I. Statutory Framework

Sunovion's motion is brought, for the most part, pursuant to Fed. R. Civ. P. 54(d)(1), which allows costs to the "prevailing party," absent a federal statute, rule or court order providing otherwise.

In patent litigation, the definition of a "prevailing party" is governed by Federal Circuit law. Manildra Milling Corp. v. Ogilvie Mills, Inc., 76 F.3d 1178, 1181-82 (Fed. Cir. 1996). To be a prevailing party, a party must obtain relief on the merits of its claim that materially alters

---

[1]     In a related suit, Civil Action No. 13-4740, Supernus prevailed against different defendants on its claims of infringement of its '898 and '131 patents and this Court's final judgment was affirmed by the Federal Circuit on December 12, 2016. Supernus likewise filed a bill of costs, seeking reimbursement of almost $275,000, but the motion was withdrawn after the parties settled on costs.

-3-

the legal relationship between the parties by modifying its opponent's behavior in a way that directly benefits that party. Id. at 1182 (citing Farrar v. Hobby, 506 U.S. 103, 111-113 (1992)). While the threshold issue of deciding prevailing party status is a matter of Federal Circuit law, the second inquiry, that of whether and how much to award, is a matter of regional circuit law. Id. at 1183. Therefore, the decision of whether to award costs to the prevailing party and the amount are matters of Third Circuit law here.

In this Circuit, there is a strong presumption in favor of awarding costs to the prevailing party, Reger v. Nemours Found., Inc., 599 F.3d 285, 288 (3d Cir. 2010), but even so, absent express statutory authorization, the Clerk may reimburse only those costs enumerated in 28 U.S.C. § 1920:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441 (1987). Therefore, the Clerk does not grant costs falling outside the above parameters, even if uncontested.

The Supreme Court reinforced its Crawford Fitting holding in Taniguchi v. Kan Pacific Saipan, Ltd., 566 U.S. 560 (2012), wherein it limited the provision in §1920 (6) for the "compensation of interpreters" to the cost of oral translation. In denying the cost of document translation, the Court stated that its decision was "in keeping with the narrow bounds of taxable costs," which are "limited to relatively minor, incidental expenses." Id. at 573.

While the prevailing party enjoys a presumption in its favor, in this district, it still bears the burden of showing that the costs sought fall within the limits of § 1920. Romero v. CSX Transp., Inc., 270 F.R.D. 199, 201-02 (D.N.J. 2010). And, the procedural aspects of a taxation motion are governed in this district by our above-cited local rule, L. Civ. R. 54.1. Lite, N.J. Federal Practice Rules (Gann 2018 ed.).

Undoubtedly, Plaintiff is the prevailing party within the meaning of Fed. R. Civ. P. 54(d) and TWi does not contest that fact. As a result of the Court's final judgment, Defendants were enjoined from marketing their generic oxcarbazepine tablets through the expiration date of the patents-in-suit. Defendants' behavior was clearly modified in a way that directly benefits Supernus.

Furthermore, Sunovion has satisfied the requirements in L. Civ. R. 54.1 and 28 U.S.C. § 1924 of timeliness, verification and invoice submittal: this motion was filed within 30 days of the entry of judgment and includes a notice of motion with return date [Dkt. Entry 368] and bill of costs, AO form 133 [Dkt. Entry 368-3]; Plaintiffs' counsel has verified that the costs are correct, the services were actually and necessarily performed, and the disbursements were necessarily incurred in this action, Declaration of Jonathan A. Herstoff, Esq. ("Herstoff Decl.") [Dkt. Entry 368-2], and attached invoices thereto, id., Exs. 1-51. The Clerk has also considered Plaintiff's brief [Dkt. Entry 368-1] and reply brief [Dkt. Entry 375-1], along with the Declaration of William C. Baton, Esq. ("Baton Decl.") [Dkt. Entry 375-2] and amended AO 133 form [Dkt. Entry 375-3], as well as Defendants' brief in opposition [Dkt. Entry 373], sur-reply [Dkt. Entry 379] and Declaration of Dustin L. Taylor, Esq. ("Taylor Decl.") [Dkt. Entry 379-1].

Before turning to the matter of costs, the Clerk first addresses Supernus' application for $37,775.00 in expert fees.

## II.    <u>Expert Fees Pursuant to Fed. R. Civ. P. 26(b)(4)(E)</u>

The $37,775.00 in expert fees sought by Supernus is described by its counsel as the cost of "preparing for and testifying at [these] depositions, for Dr. Steven Little, Dr. David Bugay, and Dr. Leonard Chyall." Herstoff Decl. ¶10. For their professional services, these experts charged between $500 and $850 per hour. <u>Id.</u> at Exs. 41-44.

In the above-cited <u>Crawford Fitting</u> case, the Supreme Court held that unless expert witnesses are court-appointed, as provided in § 1920 (6), their fees are taxable only to the extent allowed in 28 U.S.C. § 1821. 482 U.S. at 445. That is, their attendance may be taxed at $40 per day and their reasonable travel and subsistence costs allowed, but not their charges for professional services. No doubt aware of this limitation, Plaintiff's counsel argues that expert fees should be awarded in this case under Rule 26(b)(4)(E). Pl.'s Br. at 12-14.

Upon Plaintiff's filing of this application, the Clerk reviewed it and advised counsel that the allowance of expert fees pursuant to Rule 26(b)(4)(E) is not properly before the Clerk. [Dkt. Entry 377]. That rule provides that "the court" must require the payment of reasonable expert fees under certain circumstances. Unlike Rule 54(d)(1), which empowers the Clerk to rule on motions for taxation in the first instance, Rule 26 does not grant "the clerk" the power to require the payment of expert fees. In advising counsel to take this matter to the district judge, the Clerk makes no comment on the merits of Plaintiff's request or Defendants' arguments against awarding such fees.

The Clerk turns then to the taxation of the remaining requested fees in the order in which they appear in § 1920.

### III.    Fees of the Clerk and Marshal, § 1920 (1)

Costs sought by Supernus as § 1920 (1) "fees of the clerk and marshal" are the $400.00 fee for filing its complaint and a private process server's charges totaling $353.60 to serve the summons and complaint on the two defendants.  Herstoff Decl. ¶ 3, Ex. 1. Both are unopposed by TWi.

#### *Filing Fee*

This fee consists of the $350.00 fee set forth in 28 U.S.C. § 1914(a) for the filing of a civil action, and the $50.00 administrative fee established in the Judicial Conference's "District Court Miscellaneous Fee Schedule."  Subsection (b) of § 1914 allows the clerk to collect fees in addition to the $350.00 fee of subsection (a), as prescribed by the Judicial Conference. Therefore, the entire **$400.00** amount constitutes "fees of the clerk" and will be granted.

#### *Service of Process*

Guaranteed Subpoena Service, Inc.'s charges of **$176.75** and **$176.85** to serve TWi are fees of the marshal within the meaning of § 1920 (1).  Subsection (1) explicitly authorizes taxation of the costs of just the "clerk and marshal," but this Court has held that the fees of private process servers are taxable under the combined reading of § 1920 and § 1921, which allows the court to tax as costs the fees for serving a subpoena on a witness.  Ricoh Corp. v. Pitney Bowes Inc., Civ. No. 02-5639, 2007 WL 1852553, at *3 (D.N.J. June 26, 2007); Hurley v. Atlantic City Police Dep't, Civ. Nos. 93-260, 94-1122, 1996 WL 549298, at *8 (D.N.J. Sept. 17, 1996).

Therefore, the Clerk taxes this uncontested cost as well, granting a total of **$753.60** pursuant to § 1920 (1).

## IV.  Fees for Printed or Electronically Recorded Transcripts, § 1920 (2)

Under the § 1920 (2) category of "fees for printed or electronically recorded transcripts," Plaintiff seeks the $10,154.27 cost of printed hearing and trial transcripts, and the $26,823.00 cost of printed and videotaped deposition transcripts.  Herstoff Decl. ¶¶ 4, 5, Exs. 2-27. Defendants maintain that transcripts should be taxed in the reduced amount of $14,411.20, not $36,977.27.  Defs.' Br. at 3.

### *Hearing Transcripts*

This requested $10,154.27 item consists of the $1,905.72 cost of thirteen transcripts of telephonic and in person conferences and hearings, and the $8,248.55 cost of the trial transcript. Pl.'s Br. at 6-7.  The costliest hearing transcripts cover the Markman hearing ($660.54) and an appeal of the Magistrate Judge's decision ($330.33).  Id.

The § 1920 (2) standard of "necessarily obtained for use in the case" applies to hearing and deposition transcripts alike.  The Clerk usually grants the cost of the transcript of the Markman hearing because it is a crucial proceeding in patent litigation, establishing claim construction.  It was particularly necessary for counsel to obtain the transcript in this case [Dkt. Entry 85] because the Court did not immediately issue an opinion containing its reasoning.  In its October 9, 2015 order [Dkt. Entry 84], the Court referenced the hearing and stated that the Court would set forth the bases for its construction in an opinion to be issued at a later date.  The Clerk is unable to locate such an opinion on the docket and indeed, it is this transcript that the Court cited in its bench opinion after the trial.  [Dkt. Entry 352 at 17].

Likewise, Judge Bumb's order [Dkt. Entry 159] denying Defendants' appeal of the Magistrate Judge's decision ordering Defendants to produce clawed back documents [Dkt.

Entry 117] referenced the hearing and indicated that an opinion would be issued at some later date.  Like the Markman hearing transcript, this transcript [Dkt. Entry 308] provided guidance to counsel in the absence of a written opinion.  The Clerk finds them both necessary.

The remaining $900 or so in hearing transcripts covered various proceedings, such as the Initial Scheduling Conference, discovery conferences, the Final Pretrial Conference and telephone conferences with both Magistrate Judge Schneider and Judge Bumb.  The Clerk does not usually grant the cost of transcripts of pretrial conferences absence a showing of need, particularly if note-taking by counsel would have sufficed as a substitute.

In this instance, Supernus argues that it fulfilled a need for the pretrial hearing transcripts, i.e., submission on appeal, as outlined in our local rule, L. Civ. R. 54.1(g) (6):

> The cost of a reporter's transcript is allowable only (A) when specifically requested by the Judge, master, or examiner, or (B) when it is of a statement by the Judge to be reduced to a formal order, or (C) if required for the record on appeal.  Mere acceptance by the Court of a submitted transcript does not constitute a request.  Copies of transcripts for an attorney's own use are not taxable in the absence of a prior order of the Court.  All other transcripts of hearings, pretrials and trials will be considered by the Clerk to be for the convenience of the attorney and not taxable as costs.

Accompanying Supernus' reply brief is the Declaration of William C. Baton, Esq., to which counsel attaches the joint Appendix Designations for Defendants' appeal of the final judgment in Plaintiff's favor.  [Dkt. Entry 375-2, Ex. 52].  Every transcript which Supernus asks the Clerk to tax is contained within that joint appendix.

However, TWi responds that "[n]either does TWi agree that the court transcripts of the pretrial hearings are required for the record on appeal.  TWi did not place these transcripts on the joint Table of Appendix Designations and disputes that they are required."  Defs.' Sur-Reply at 3 n.2.

As the Clerk understands the situation, to support its appeal to the Federal Circuit, TWi designated portions of the record before this Court and Supernus then supplemented TWi's designations with the transcripts of the various pre-trial hearings. Pursuant to Fed. R. App. P. 30 (b)(1), TWi was obligated to include in the appendix the additional parts designated by Supernus, whether it deemed them necessary or not.

Therefore, contrary to Supernus' assertion, Pl.'s Reply at 3, the fact that these transcripts were included in the joint appendix is not an admission by TWi that they were in fact necessary for the appeal. Indeed, TWi continues to assert that the transcripts were not required and frankly, the Clerk does not appreciate the significance of them, several of which have been described by Supernus merely as "Transcript of Teleconference," without even any indication of the topic of the teleconference. Pl's Br. at 6-7.

Plaintiff does not assert that during the teleconferences or other hearings, Magistrate Judge Schneider or Judge Bumb issued oral rulings, instructions or the like which made it necessary for Plaintiff to obtain the transcripts to effectively prepare for trial or to draft proposed orders for submission to the Court. In contrast, in the case of Prometheus Labs., Inc. v. Roxane Labs., Inc., the Court granted the cost of the transcripts of ten pre-trial hearings containing the Magistrate Judge's opinions on matters such as "motions to seal, motions for reconsideration and appeals, motions regarding invalidity contentions, discovery motions, a motion for sanctions, and Daubert motions." Civ. Nos. 11-230, 11-1241, 2016 WL 1559144, at *6 (D.N.J. Apr. 18, 2016).

The docket contains references to these transcripts. Some are sealed [Dkt. Entries 150, 188, 204] and unavailable to the Clerk, and others reviewed by the Clerk contain scant substance that could have been captured by note-taking. [Dkt. Entries 41, 115, 127, 199, 264]. Failing

its burden of showing the necessity of these pre-trial hearing transcripts, Plaintiff is allowed just the costs of the transcripts of the Markman hearing ($660.54) and the hearing on the appeal of the Magistrate Judge's decision ($330.33), or a total of **$990.87**.

### *Trial Transcripts*

The requested $8,248.55 cost of the 995-page transcript of the four-day trial includes charges for an original ($3,621.80), a first copy ($1,194.00) and a second copy ($1,343.25), all at the hourly rates, and a Realtime charge of $2,089.50. Relying upon the earlier-cited L. Civ. R. 54.1(g)(6), TWi concedes that the original was necessary for the appeal and agrees to allowing just $3,621.80. Defs.' Br. at 7-8.

In response to Defendants' objection that Realtime services were not necessary, Plaintiff cites the decision of this Court in another patent case, <u>Otsuka Pharm. Co., Ltd v. Sandoz, Inc.</u>, which stands in contrast to the Clerk's usual allowance of the costs of just an original and one copy of the transcript. Civ. No. 07-1000, 2015 WL 5921049 (D.N.J. Oct. 9, 2015). The Court there taxed the costs of Realtime and ASCII, finding them "indispensable" due to the complex nature of the case, the number of witnesses and volume of documents presented. <u>Id.</u> at 7.

However, in the more complex <u>Otsuka</u> case, tried over 15 days, the prevailing party asked for Realtime costs in addition to daily trial transcripts. Here, Defendants are willing to compensate Plaintiff for the hourly rate charged and the Clerk can comprehend the necessity, as in prior cases, of hourly transcripts for counsel's reference during the trial, in addition to the preparation of post-trial briefing. However, the Clerk cannot find that Realtime was necessary in addition to hourly transcripts. <u>See</u> <u>e.g.</u>, <u>Mylan Inc.v. SmithKline Beecham Corp.</u>, Civ. No. 10-4809, 2015 WL 1931139, at *6 (D.N.J. Apr. 28, 2015). The Clerk taxes the original at $3,621.08 and first copy at $1,194.00, or a total of **$4,815.08**.

Bundled together, the costs of the hearing ($990.87) and trial transcripts ($4,815.08) are granted in the combined amount of **$5,805.95**.

### *Printed and Videotaped Deposition Transcripts*

The costs of printed and videotaped transcripts, totaling $26,823.00, are sought for the depositions of Plaintiff's and Defendants' fact and expert witnesses: Dr. Steven Little; Dr. Shou-Chiung Chen; James Chen; Yuting Huang; Dr. David Bugay; Dr. Leonard Chyall; Dr. Cory Berkland; and Dr. Edmund Elder. Herstoff Decl. ¶ 4, Exs. 2-13; Pl.'s Br. at 5-6. Requested costs include those for the printed original and/or certified copy, reporter appearance, expedition, exhibits, litigation support services (Realtime, rough draft/ASCII, "electronic transcript suite," "Live Note LEF"), shipping & handling, videography, DVD sync, and sales tax on the videography.

Defendants do not contest the necessity of any of the transcripts, which is clear to the Clerk, but they do contend that Supernus' request is over-inclusive in terms of services and dispute the amount that should be taxed. Regarding the printed transcripts, TWi agrees to the taxation just of their costs at the non-expedited rate of $3.45 per page, to the exclusion of the costs of the additional services mentioned above. Defs.' Br. at 5-6.

As for the videotaped format of the depositions, all of which mirror the printed transcripts, Defendants concede that the costs of those videotapes noticed by them or played at trial by Supernus should be taxed. Id. at 4-5. That is, they agree to the videography fees, but not those for "DVD sync." However, TWi objects to allowing any of the videotaping costs of the depositions of its experts, Drs. Berkland and Elder, noticed by Plaintiff and not played during the trial. Defendants would have the Clerk grant only a total of $10,789.40 in deposition transcript costs, rather than the requested $26,823.00.

As justification for the extra services in connection with the printed transcripts, Supernus points to "the highly technical nature of the testimony and the compressed timeframe for depositions." Pl.'s Br. at 5. However, Defendants observe that the Clerk has denied the costs of litigation support services, such as Realtime, in other, more complex Hatch-Waxman cases. Defs.' Br. at 4. As noted in the Joint Final Pretrial Order [Dkt. Entry 235-2], the issues in this case, involving just two claim elements and two defenses, were narrowed by litigation of Civil Action No. 13-4740, involving three of the same patents-in-suit, i.e., the '898, '131 and '600 patents. Claim construction of a dozen terms in that case was adopted in this case by the October 7, 2015 Stipulation and Order Regarding Claim Construction. [Dkt. Entry 78].

As for the costs of expedition, Plaintiff states that "due to the compressed timeframe in which the depositions were taken in this case, transcripts were required on an expedited basis." Pl.'s Br. at 4 (footnote omitted). Plaintiff explains, "Supernus took depositions in Taiwan over several days in June 2016 because the scheduling order at the time set a fact-discovery deadline of July 15, 2016 (ECF No. 112)." Pl.'s Br. at 4 n.3. On June 1, the Court extended the deadline for factual discovery until July 15. [Dkt. Entry 112]. During that six-week period, Supernus in fact took just three depositions in Taiwan on two different days.

Supernus continues, "[a]dditionally, most expert depositions were taken in a one-month timeframe due to the short period between the deadline for reply expert reports and the cutoff date for depositions. (ECF No. 170)." Id. On September 23, 2016, Magistrate Judge Schneider extended the date for reply expert reports from October 3 to October 17 and the date for expert depositions from November 2 to November 22. [Dkt. Entry 170]. Therefore, counsel had two months from the Magistrate Judge's order, or from September 23 to November 22, to

schedule depositions and five weeks between the deadline for reply reports and depositions

deadline, or from October 17 to November 22, to depose experts. During that time period,

just three experts, Drs. Bugay, Elder and Berkland, were deposed, on November 2, 10 and 15.[2]

In the Clerk's view, these are not "compressed" time frames, justifying the costs of

expedited services. Moreover, Plaintiff does not explain why the transcripts were needed

shortly after their taking. For example, Supernus does not assert that expedited transcripts

were necessary to comply with a court-imposed deadline for summary judgment briefing or

any other purpose. The costs of expedition are denied.

As for the costs of videotaping, performed for all of the depositions, TWi agrees

to the videography charges for all depositions except for those of its experts, Drs. Elder and

Berkland. However, Defendants contest all costs for "DVD sync" or video synchronization.

Video synchronization is a service which times the videotape to the lines of the transcript

to facilitate videotape editing. The Clerk has previously held that this is a non-taxable

convenience of counsel. See e.g., Depomed, Inc. v. Actavis Elizabeth LLC, Civ. Nos. 13-4507,

13-7803, 13-6929, 14-3941, 14-4617, 15-6797, 2018 WL 999673, at *9 (D.N.J. Feb. 21, 2018)

and cases cited therein. On that basis, he denies all charges for "DVD sync."

In support of videotaping the depositions of Defendants' experts, Dr. Berkland and

Dr. Elder, Supernus states, "Drs. Berkland and Elder were TWi's only expert witnesses in

this case and Supernus had no way of knowing whether they would ultimately testify at trial."

---

[2] The Clerk notes that Plaintiff's experts, Dr. Chyall and Dr. Little, were deposed beyond the extended deadline, on November 30 and December 2, 2016, although Supernus' counsel advised defense counsel on October 5 that these experts were available to be deposed on November 10 and 17. Taylor Decl., Ex. B. The circumstances for this delay have not been explained.

Pl.'s Reply at 2. And yet, Plaintiff gives no reason, such as illness, why these two experts would have been unavailable to testify at trial. This vague, unjustified hunch that Defendants' experts might fail to appear to testify live is insufficient to support the cost of videotaping their depositions. Furthermore, Supernus does not explain why the printed transcripts would have been inadequate. These charges too are disallowed.

Three other types of charges must be addressed, i.e., those for reporter appearance, deposition exhibits, and for shipping and handling or delivery.[3] The Clerk always grants the cost of reporter appearance, a charge that must be paid to obtain the transcript, and Defendants do not explain why they contest such charges.

Regarding the costs of deposition exhibits, they are regularly denied as a convenience to counsel, absent a showing that they were not already in hand. Such a showing has not been made here.

Finally, as for the shipping charges, the Clerk routinely denies such costs because this Court has held that they are not recoverable under § 1920. <u>Boyadjian v. Cigna Cos.</u>, 994 F. Supp. 278, 281 (D.N.J. 1998) (denying costs of postage because they are not listed in § 1920); <u>Bollitier v. Int'l Bhd. of Teamsters</u>, 735 F. Supp. 623, 629 (D.N.J. 1989) (denying taxation of costs of mailing); <u>Hurley</u>, 1996 WL 549298, at *4 (postage, delivery and messenger services fall under attorney's fees, not § 1920).

Considering all of the foregoing, the Clerk taxes the following requested transcript costs, in the order in which they appear in Plaintiff's Exhibits 2 through 13 [Dkt. Entry 368-2], and denies the rest:

[3] The Clerk is not concerned with TWi's argument that no documentation supports the costs of the James Chen and Huang transcripts. Defs.' Br. at 5-6 nn.2, 3. They were merely combined [Dkt. Entry 368-2, Ex. 6] and can be adequately addressed.

| Deponent | Taxed Amount |
|---|---|

**Dr. Steven Little (9/24/15)**

| | |
|---|---|
| Copy, 127 pp., at unexpedited $3.45/p. rate | $ 438.15 |
| Videography fee | $ 312.50 |

**Dr. Edmund Elder (9/24/15)**

| | |
|---|---|
| Original Transcript | $ 310.50 |
| Reporter appearance | $ 35.00 |

**Dr. Shou-Chiung Chen**

| | |
|---|---|
| Original + 1 certified copy | $ 2,500.00 |
| Videography fee | $ 1,800.00 |
| Tax on videography fee, 8.875% | $ 159.75 |

**James Chen and Yuting Huang, combined**

| | |
|---|---|
| Original + 1 certified copy | $ 2,500.00 |
| Videography fee | $ 1,800.00 |
| Tax on videography fee, 8.875% | $ 159.75 |

**Dr. David Bugay**

| | |
|---|---|
| Certified copy | $ 917.70 |
| Videography fee | $ 687.50 |

**Dr. Edmund Elder (11/10/16)**

| | |
|---|---|
| Original + 1 certified copy | $ 759.00 |
| Reporter appearance | $ 70.00 |

**Dr. Cory Berkland**

| | |
|---|---|
| Original + 1 certified copy | $ 631.35 |
| Reporter appearance | $ 70.00 |

**Dr. Leonard Chyall**

| | |
|---|---|
| Certified copy | $ 676.20 |
| Videography fee | $ 625.00 |

**Dr. Steven Little (12/2/16)**

| | |
|---|---|
| Certified copy | $ 631.35 |
| Videography fee | $ 500.00 |

| | |
|---|---|
| Total: | $15,583.75 |

The costs of printed and videotaped deposition transcripts are granted in the total sum

of **$15,583.75**.

Combining the granted costs of hearing/trial transcripts ($5,805.95) and deposition transcripts ($15,583.75), costs taxed pursuant to § 1920 (2) total **$21,389.70**.

## V.     Witness Fees, § 1920 (3)

Witness fees sought pursuant to § 1920 (3) cover the appearance at deposition of Plaintiff's experts, Dr. Steven Little (twice), Dr. David Bugay and Dr. Leonard Chyall, as well as their appearance at trial.  Herstoff Decl. ¶¶ 6-9, Exs. 28-40. While Supernus seeks reimbursement in the amount of $7,389.25, Pl.'s Br. at 9-11, Defendants press for taxation in the reduced amount of $1,253.75, Defs.' Br. at 8-10.

TWi's position that Plaintiff's requested fees are inflated is supported by arguments that:  fees associated with depositions located in New York, which required these experts to travel from Pennsylvania and Indiana, must be denied because the New York location was for the convenience of Supernus' counsel; travel services used were not at the "most economical rate reasonably available," as required under the applicable statute; and an excessive number of nights' lodging is requested for trial attendance.  Defs.' Br. at 8-10.  Defendants agree to just $360.00 in statutory attendance fees and five nights of lodging during the trial at the applicable Philadelphia rate (incorrectly quoted), or an additional $893.75.  Id.

Before discussing the specific costs, the Clerk addresses TWi's general argument that all travel and subsistence costs in connection with the depositions must be denied because they were unnecessarily incurred.  Plaintiff responds that the location of all of the depositions in this case was mutually agreed upon by counsel for both parties, not arranged just to suit the convenience of its counsel.  Pl.'s Reply at 4.  Defendants refute this, providing an email from Supernus' counsel indicating when "Supernus's experts [we]re available for their

depositions in [its] New York office."  Taylor Decl., Ex. B.  The Clerk does not find this conclusive evidence of non-consent by TWi's counsel, in the absence of any indication that defense counsel objected to the New York location in response.  This argument is rejected and the costs of the experts' attendance for deposition in New York will be granted to the extent statutorily allowed.

Our Local Civil Rule 54.1(g) incorporates by reference 28 U.S.C. § 1821, which controls allowable witness fees:

> (1)  The fees of witnesses for actual and proper attendance shall be allowed, whether such attendance was voluntary or procured by subpoena. The rates for witness fees, mileage and subsistence are fixed by statute (see 28 U.S.C. § 1821).  Witness fees and subsistence are taxable only for the reasonable period during which the witness was within the District.  Subsistence to the witness under 28 U.S.C. § 1821 is allowable if the distance from the courthouse to the residence of the witness is such that mileage fees would be greater than subsistence fees if the witness were to return to his or her residence from day to day.

L. Civ. R. 54.1(g) (1).

L. Civ. R. 54.1(g) (7) further provides that "[f]ees for the witness at the taking of a deposition are taxable at the same rate as for attendance at trial. (See L. Civ. R. 54.1(g )(1).)"

Section 1821 of Title 28 provides for the payment of witnesses' fees and allowances for their attendance in federal court.  28 U.S.C. § 1821(a) (1).  Subsection (b) therein allows a $40 per day attendance fee "for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance."  Subsection (c) provides for the actual expenses of the most economical common carrier that is reasonably available, traveling the shortest practical route, as well as "[a]ll normal travel expenses within and outside the judicial district," including parking fees and tolls.

Subsection (d) allows a subsistence fee for a required overnight stay, provided that the per diem rate does not exceed the allowance established by the Administrator of General Services ("GSA") pursuant to 5 U.S.C. § 5702(a), in the area of attendance.[4]

Supernus uses the appropriate GSA per diem rates. For lodging, the GSA rates for depositions in New York City were: $304/night for Dr. Little's September 2015 deposition; $301/night for Dr. Bugay's and Dr. Chyall's November 2016 depositions and for Dr. Little's December 2016 deposition. http://www.gsa.gov/perdiem. During the trial in April 2017, the GSA rate for Philadelphia lodging was $188.00 (not $178.75, suggested by TWi, Defs.' Br. at 9). Id.

**Deposition Fees**

**Dr. Steven Little, September 24, 2015 -** For this expert, who hailed from Alison Park, PA, Supernus requests: ground transportation between his home and Pittsburg International Airport, on both ends of the trip ($96.00 x 2); lodging for the two nights preceding his deposition ($608.00); and one day of attendance fees ($40.00). Airfare has not been requested.

Aside from their general objection, Defendants specifically object that car service at this rate was not "at the most economical rate reasonably available," as limited in § 1821(c). They point out the Romero case, in which this Court denied the $462.40 cost for two witnesses to travel a total of 56 miles. Defs.' Br. at 9, Defs.' Sur-Reply at 6. Instead, the Court allowed just the mileage fee for travel by privately-owned vehicle, calculated at the then-current GSA rate. 270 F.R.D. at 203-04.

---

[4]     While § 1821 allows for the costs of meals ("M & IE"), also at GSA rates, Supernus has not included such costs in its request.

Supernus replies that "TWi does not explain why Supernus's use of local car services does not constitute 'normal travel expenses' under 28 U.S.C. § 1821(c)(4). This is especially true considering that other modes of transportation (e.g., taxicabs) were not always readily available." Pl.'s Reply at 4.

In this age of Uber and Lyft, with reports of a glut of taxicab services and cab drivers struggling to earn a living, it is hard to imagine that cabs were not readily available. Even so, the Clerk cannot find the fare at issue extravagant, like the <u>Romero</u> fare, which averaged $8.25 per mile. The trip between Dr. Little's home and the airport was approximately 28 miles, so the $96.00 charge is equivalent to a rate of about $3.45 per mile. The Clerk does not find this cost to be excessive and will allow it for Dr. Little's appearance at both depositions and trial.

Considering the travel involved, the Clerk finds it reasonable for Dr. Little to have arrived the day before his deposition, but not two days beforehand. The statute allows fees of a witness "in attendance at any court of the United States, or before a United States Magistrate Judge, or before any person authorized to take his deposition," 28 U.S.C. § 1821 (a)(1), not for preparation with counsel for a deposition. Dr. Little returned home on the evening of his deposition. Therefore, two days of attendance fees ($40.00 x 2) will be allowed, as well as one night's lodging ($304.00), in addition to ground transportation costs. The total allowed for this witness is **$576.00** ($96.00 + $96.00 + $80.00 + $304.00).

**Dr. David Bugay, November 2, 2016 -** For this witness from West Lafayette, IN, Supernus asks only for the $40.00 statutory attendance fee. Absent any indication that this witness traveled from out-of-state for this deposition, the Clerk allows just this **$40.00** fee.

**Dr. Leonard Chyall, November 30, 2016** - For this witness from Lafayette, IN, Plaintiff asks for: ground transportation ($162.60); one day of attendance fees ($40.00); and two nights

of lodging ($602.00). The $162.60 cost for travel between Dr. Chyall's home and the airport, coming and going, is reasonable, considering that the distance each way is approximately 68 miles. Allowing for travel on the day preceding his deposition, the Clerk also grants two days of attendance fees ($80.00) and one night's lodging ($301.00) or a total of **$543.60**.

**Dr. Steven Little, December 2, 2016** – Supernus asks for: ground transportation between this expert's home and the airport, both ways, at the rate approved above ($96.00 x 2); airfare, reduced from the cost of first-class to the estimated cost of economy class ($197.80); two nights of lodging ($602.00); and one day of attendance fees ($40.00). The Clerk allows the ground transportation and airfare, but decreases lodging to one night and increases the attendance fee to two days, considering the long-distance travel involved. These total **$770.80**.

**Trial Fees**

The Clerk agrees with TWi that Plaintiff's request for eight nights of lodging each for Drs. Chyall and Bugay, and seven for Dr. Little for their attendance at a four-day trial is excessive. As was explained above, § 1821 covers fees in connection with witnesses' attendance at trial, not for pre-trial preparation. Defendants correctly observe that the United States Supreme Court has interpreted "attendance" in § 1821 to mean "necessary attendance." Defs.' Sur-Reply at 6-7, quoting Hurtado v. United States, 410 U.S. 578, 583-87 (1973). A witness is in "necessary attendance" when that person holds him/herself available to testify, even on days which might precede or follow the actual days of his or her testimony. Id. at 584; Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 335 (5th Cir. 1995). The costs of attendance for the purpose of consultation only are not taxable.

TWi asserts that the parties exchanged the order of their witnesses' testimony in the Joint Final Pretrial Order, Defs.' Sur-Reply at 7, and would have the Clerk tax only the costs

of attendance on the days that Supernus' experts actually testified, or one day for Dr. Chyall and two days for each of Dr. Bugay and Dr. Little, Defs.' Br. at 9-10.  Plaintiff explains that its experts "were required to be available for the entirety of trial in the event that TWi's case-in-chief necessitated rebuttal testimony from Supernus's experts."  Pl.'s Reply at 4.

The trial began on April 3, 2017.  Dr. Bugay testified on that day and continued on the following day, on April 4.  [Dkt. Entries 249, 253].  Dr. Chyall did not testify until the second day, April 4, but it was necessary for him to be available on the first day, when court recessed early, at 2:15.  Dr. Little testified at the end of the third day, on April 5, and again on the last day of trial, April 6.  [Dkt. Entries 254, 255].  On the 6th, he testified also as a rebuttal witness.  The Clerk agrees that it was necessary for these experts to be available after their actual testimony until the end of the trial for the purpose of possible rebuttal, as occurred with Dr. Little.

With the above in mind, and allowing additional days of attendance to accommodate long-distance travel, the Clerk taxes witness fees as follows:

**Dr. David Bugay** - Plaintiff asks for just attendance fees for days of actual testimony ($80.00) and eight nights of lodging, from March 30 through April 6 ($1,430.00).  No travel costs are requested.  Trial did not end until 6:00 on April 6 and this witness stayed overnight in Philadelphia that evening.  For this witness, who testified on the first day of trial, the Clerk will allow attendance from the day before trial, April 2 through the day after trial, April 7, for his return home.  This amounts to five nights of lodging ($188.00 x 5) plus six days of attendance fees ($40.00 x 6) or a total of **$1,180.00**.

**Dr. Leonard Chyall** - For this witness, who actually testified on just the second day, and stayed in Philadelphia through the evening that the trial ended, Supernus asks for one day

-22-

of attendance fees ($40.00) and eight nights of lodging ($1,430.00). No travel costs are sought. As noted above, it was conceivable that his testimony may have been reached on the first day, the day before he actually testifed. The Clerk allows the same as for Dr. Bugay, **$1,180.00**.

**Dr. Steven Little -** For this witness, who testified later in the trial than the above two experts, Supernus asks for travel costs of his return first-class airfare, reduced to the estimated cost of economy class ($167.60), and car fare ($81.25, $83.00), in addition to two days of attendance fees ($80.00) and seven nights of lodging ($1,279.00). This witness did not testify until the end of the third day, on April 5, and like the other two witnesses, did not return home until April 7. Allowing a travel day before his first day of necessary attendance, the Clerk allows attendance from April 4 through April 7 or three nights of lodging ($188.00 x 3) plus four days of attendance fees ($40.00 x 4). The airfare is reasonable, but ground transportation must be reduced. The $83.00 charge is denied because it is not supported by an invoice. [Dkt. Entry 368-2, Ex. 39]. The other charge for $81.25 covered a limousine service used for the 10-mile trip from this witness' hotel to the airport. Surely, a less costly taxi ride would have been available from the hotel. This cost is on a par with the cost denied by the Romero court and like that court, the Clerk grants just the applicable GSA mileage allowance or $.535/mile for 10 miles. https://www.gsa.gov/travel/plan-book/transportation-airfare-rates-pov-rates-etc/ privately-owned-vehicle-pov-rates/pov-mileage-rates-archived. This witness' taxable costs total **$896.95** ($564.00 + $160.00 + $167.60 + $5.35).

Pursuant to § 1920 (3), witness fees are taxed in the sum of **$5,187.35** ($576.00 + $40.00 + $543.60 + $770.80 + $1,180.00 + $1,180.00 + $896.95).

## VI.    Fees for Exemplification and the Costs of Making Copies, § 1920 (4)

Subsection (4) of § 1920 contains two prongs, i.e., "fees for exemplification" and "the costs of making copies."  Under the former category, Supernus seeks the costs of: visual aids ($36,477.00); hyperlinking of the trial briefs ($12,210.00); and equipment rental ($1,724.31).  Herstoff Decl. ¶¶ 12-14.  Under the latter, Plaintiff asks for the costs of electronic discovery ($6,242.50) and photocopies ($13,387.50).  Id. at ¶¶ 11, 15.  As shown on the movant's amended AO 133 form, the aggregate cost is $70,041.31 but TWi contends they are taxable in the amount of only $1,724.31.  Defs.' Br. at 12.

The Clerk's analysis makes more sense if the second prong, that of "making copies," is addressed first.

### *The Costs of Making Copies*

The costs of electronic discovery and photocopies fall under this category.

### Electronic Discovery

For their costs to be taxed, copies must be shown to have been "necessarily obtained for use in the case."  § 1920 (4).  Both sides recognize that the application of this requirement to the taxation of electronic discovery is governed by the seminal Third Circuit case of Race Tires Am., Inc. v. Hoosier Race Tire Corp., 674 F.3d 158 (3d Cir. 2012).  There, the parties agreed to produce electronically stored information ("ESI") in Tagged Image File Format ("TIFF"), an image format whereby ESI is converted into a non-editable digital file, allowing for the endorsing of pages and confidentiality branding.  The case management order required the Bates numbering of each page and proper unitization of the documents, the production of metadata fields, and an extracted text file or searchable version of every electronic document in a document level text file.  Id. at 161.

-24-

The services performed by third-party electronic discovery vendors, of which costs were sought, consisted of: "(1) preservation and collection of ESI; (2) processing the collected ESI; (3) keyword searching; (4) culling privileged material; (5) scanning and TIFF conversion; (6) optical character recognition ('OCR') conversion; and (7) conversion of racing videos from VHS format to DVD format." Id. at 161-62.

The Third Circuit first determined that the vendors' services did not constitute "exemplification," as set forth in § 1920 (4), and then addressed which charges fell under the other category of § 1920 (4), "the cost of making copies." The court held that of the many services performed, only the costs of scanning hard copy documents, converting native files to the agreed-upon format, and transferring VHS tapes to DVD format were taxable. Id. at 171. The court denied the costs of other services required under the case management order, reasoning, "Congress did not authorize taxation of charges necessarily incurred to discharge discovery obligations. It allowed only for the taxation of the costs of making copies." Id. at 169.

TWi asserts that these charges must be disallowed because "[w]hile it is true that there are some entries that include the conversion of native files to TIFF, those entries also include non-taxable charges for Bates labeling and other processes that are not taxable." Defs.' Br. at 13.

Plaintiff replies that "Twi's argument ignores the fact that Supernus is seeking only a small fraction of the costs recorded by the timekeeper" and that its request for only $6,242.50 of the $34,432.50 billed for document support services between 2015 and 2017 is "eminently reasonable" and "more than accounts for TWi's concerns regarding the few time entries that arguably include 'costs for non-taxable work.'" Pl.'s Reply at 6.

The descriptions of the billed services consist entirely of the following: "Processed Electronic files, Converted files into Tiff's, Bates stamped Tiff's, Ocr'd documents and loaded

images into eClipse"; "Collected Electronic files, Bates stamped Tiff's, Ocr'd documents and burned images to a Thumb Drive for production to TWI"; "Organized, prepared and endorsed trial exhibits as requested by attorney"; "Collected electronic files, bates stamped Tiff's, Ocr'd documents and burned images to a DVD for production to TWi"; "Searched and retrieved PDF documents from eClipse as instructed by attorney"; "Load new documents into eClipse"; "Dep Prep searches in eClipse as requested by attorney"; "Searched and obtained articles as requested by attorney"; "Organized, Prepared and endorsed Trial Exhibits as requested by attorney"; and "Organized and edited deposition video clips as requested by attorney for trial preparation." [Dkt. Entry 368-2, Ex. 45].

TWi aptly sums it up in its statement that "Supernus' requested costs for ESI fail because there is no way to separately identify the taxable costs for creating TIFFs." Defs.' Br. at 13. This is not, as Supernus claims, a matter of a "few entries" arguably including non-taxable work. Every single entry includes non-taxable services. No services whatsoever of the type deemed taxable by the <u>Race Tires</u> court have been isolated. Even if he were inclined to do so, the Clerk has no way of hazarding a guess at the taxable costs. The fact that Plaintiff is requesting a small portion of the entire bill is irrelevant to this analysis. The costs of electronic discovery are denied in their entirety.

**Photocopies**

After a $166.25 correction in its reply, Pl.'s Reply at 9 n.50, Supernus asks the Clerk to tax a third-party's fees for photocopies as follows: 12,325 color copies charged at $1.00 per page and 4,250 black and white ones charged at $.25 per page, or a total of $13,387.50. Herstoff Decl. ¶ 15, Ex. 50.

Defendants assert that all costs should be denied due to deficiencies in Plaintiff's proofs. The supporting invoices merely list the number of copies and price rate and show dates after the conclusion of the trial. Furthermore, there is no identification of the copies or their purpose. TWi also protests that a quantity of over 12,000 is an excessive number of color copies. Defs.' Br. at 15-16.

Plaintiff responds with the Barton Declaration, in which counsel avers that the vendor, Novitex Enterprise Solutions, "provided photocopying, printing, and binding services to our team prior to and during the trial," and that $13,387.50 worth of copying was done "in preparation for, and for use during, the trial in this matter." Barton Decl. ¶ 5.

Counsel further explains that "[d]ue to limitations in our billing software, these dates do not accurately reflect when the photocopying and printing was [sic] done, but rather, the dates reflect when that information was entered into Novitex's system." Id. at ¶ 6.

Plaintiff maintains that unrealistic accounting is unnecessary, that just providing the best breakdown obtainable from the records is sufficient. Pl.'s Reply at 8. Addressing the number of copies, Supernus points out that eight witnesses testified at trial and 579 exhibits were identified in the Joint Final Pretrial Order. Id. at 9.

TWi has the last word, observing that Mr. Barton does not even distinguish between taxable and non-taxable entries as he avers that the costs include those for binding, which the Clerk consistently denies as non-taxable. Defs.' Sur-Reply at 9. See e.g., Warner Chilcott Labs. Ireland Ltd. v. Impax Labs., Inc., Civ. Nos. 08-6304, 09-2073, 09-1233, 2013 WL 1876441, at *12 (D.N.J. Apr. 18, 2013) (citing cases).

It is true that the prevailing party bears the burden of stating the general purpose of the photocopies, their necessity and their cost, but it need not give an economically unfeasible

page-by-page justification. The Clerk appreciates the volume of copies which was necessary during the trial, considering the number of exhibits identified in the Joint Final Pretrial Order. [Dkt. Entry 235-2]. Additionally, he observes that that Order required counsel to exchange full color copies of exhibits used during opening and closing statements as well as during the direct examination of witnesses. Id. at 63-64.

Nevertheless, the Clerk finds merit in Defendants' objections. First, only one color copy of each exhibit was necessary as they could be exchanged electronically or be made available for physical inspection. Counsel was not required to provide his/her adversary with physical copies of exhibits in color. Id.

Secondly, as TWi points out, Plaintiff's proofs do not isolate the cost of the non-taxable binding.

Thirdly, the Clerk has concerns with the description of the copies as including those used "in preparation for" the trial, in the words of Plaintiff's counsel. As enunciated throughout the case law, a dichotomy exists between copies which are deemed necessary and those which merely serve the convenience of counsel. The cost of copies produced in discovery, and provided to opposing counsel and the court are taxable, as are the costs of trial exhibits, whereas the costs of general copying and copies made for the prevailing party are not. It is not clear that the copies made "in preparation for" the trial did not include extra copies for the four Plaintiff's attorneys present during the trial [Dkt. Entries 386, 388, 390, 392] or copies of documents such as case law.

Accordingly, in order to balance the presumption in favor of granting costs to prevailing party Supernus and its somewhat deficient proofs, the Clerk will grant the reasonable cost of one half of the number of photocopies, or 6,163 color copies and 2,125 black and white copies.

As just noted, the Clerk will grant the "reasonable" cost of the allowed number of copies. He finds the requested rates of $1.00 per color and $.25 per black and white copy to be high. In the case of <u>Interfaith Community Org. v. Honeywell, Int'l</u>, the Third Circuit noted that most courts find the rate of $.10 to $.15 per black and white copy to be appropriate and pointed out the $.10 per page rate then (and still) used by the Third Circuit, L.A.R. 39.3(c). 426 F.3d 694, 717 (3d Cir. 2005). The Circuit Court also commented that color copies are obviously more expensive than black and white ones. <u>Id.</u> at n.20.

Therefore, black and white copies will be taxed at $.15 each or 60% (15/25) of the requested rate. Using this same 60% factor, color ones will be taxed at $.60 each. Photocopies are granted in the total amount of **$4,016.55** ((2,125 x $.15) + (6,163 x $.60) = $318.75 + $3,697.80).

### *Fees for Exemplification*

If taxable, the costs of hyperlinking, visual aids and equipment rental requested by Supernus would be subsumed under the other prong of § 1920 (4), i.e., fees for exemplification.

### **Hyperlinking of Post-Trial Briefing**

Plaintiff asks for reimbursement of the $12,210.00 cost of preparing electronic hyperlinked post-trial briefing, statements of fact and responses thereto, Herstoff Decl. ¶ 13, Ex. 48, which was court-ordered. [Dkt. Entries 269, 270]. Supernus explains that the hyperlinking was "necessarily obtained for use in the case" because it was required by the Court. Pl.'s Br. at 15.

TWi responds that the Clerk has previously disallowed this type of cost, based upon the guidance of the Third Circuit in the <u>Race Tires</u> case. <u>Prometheus Labs., Inc.</u>, 2016 WL 1559144, at *13.

Supernus counters with the citation of one case in which the court allowed the costs of hyperlinking a digital copy of an administrative record as a "functional enhancement" that accompanied the digital copy and "an integral part of the process of copying." Plaintiff's Reply at 6-7, citing <u>Sequoia Forestkeeper v. Elliot</u>, No. 1:13-cv-1721, 2015 WL 5179069, at *1 (E.D. Cal. Sept. 4, 2015).

The Clerk certainly does not view the services of FTI Consulting, Inc. as that of copying within the parameters of the <u>Race Tires</u> decision. The question remains though whether our appellate court would consider it as taxable "exemplification" within the meaning of § 1920 (4). Unfortunately, the Third Circuit did not define that term in <u>Race Tires</u> and has not done so elsewhere.

The Clerk here takes the same stance he did in the <u>Prometheus</u> case. 2016 WL 1559144, at *13 (discussing cases denying such costs, i.e., <u>RG Steel Sparrows Point, LLC v. Kinder Morgan Bulk Terminals, Inc.</u>, Civ. No. WMN 09-1668, 2016 WL 1377405, at *7 (D. Md. Apr. 7, 2016); <u>In re Omeprazole Patent Litig.</u>, MDL Dkt. No. 1291, 2012 WL 5427849, at *9 (S.D.N.Y. Nov. 7, 2012); <u>Osorio v. Dole Food Co.</u>, No. 07-22693, 2010 WL 3212065, at *7 (S.D. Fl. July 7, 2010), <u>report and recomm. adopted</u>, 2010 WL 3212062 (S.D. Fl. Aug. 12, 2010)). In light of the very narrow interpretation of § 1920 by the Supreme Court in the <u>Taniguchi</u> case and by the Third Circuit in <u>Race Tires</u>, the Clerk cannot predict that those courts would tax an "enhancement" of a copy.

The reasoning of the <u>In re Omeprazole</u> case appeals to the Clerk. Our sister court across the river found that the costs of hyperlinking post-trial findings of fact and conclusions of law fell squarely within the category of attorney's fees. After all, the services provided here by

FTI Consulting consisted of enhancing Plaintiff's briefing and they are therefore akin to attorney's fees. The fact that Plaintiff enlisted the technical services of a consulting firm to assist with the enhancement is irrelevant. The Race Tires court said it well, "[Section 1920(4)] does not authorize taxation merely because today's technology requires technical expertise not ordinarily possessed by the typical legal professional." 674 F.3d at 169.

Supernus attempts to distinguish case law by pointing out that the hyperlinking was court-ordered in this case. Plaintiff confounds two distinct issues, i.e., that of defining the services as copying or exemplification, and that of finding them "necessary." Yes, the services were necessary because the Court ordered them. They were for the convenience of the Court, and not of counsel. Nonetheless, the Court's imposition of certain requirements does not convert non-taxable attorney fees into taxable copying or exemplification. The Race Tires court addressed this distinction in connection with the taxation of ESI, noting, "Congress did not authorize taxation of charges necessarily incurred to discharge discovery obligations. It allowed only for the taxation of the costs of making copies." Taxation of copies pursuant to § 1920 (4) requires a finding of both the act of making copies and necessity.

In consideration of the above, the Clerk denies the costs of hyperlinking.

**Visual Aids**

Plaintiff asks for $36,477.00 to cover FTI Consulting's fees for professional services charged at the rate of $250/hr. for: "Graphics Consulting"($15,525.00); "Graphics Production" ($1,000.00); and "On-Site Graphics Support" ($19,175.00), as well as the expense of four courtboards ($777.00).[5] Herstoff Decl. ¶ 12, Exs. 46, 47.

---

[5] Plaintiff's calculation is off by $.60 because the courtboards were actually charged at $777.60.

"Graphics Consulting" consisted of creating and revising "demonstratives" for Plaintiff's three experts, Drs. Little, Bugay and Chyall as well as for the opening presentation. "Graphics Production" consisted of generating "animated .GIF of mixing blades from frame sequence" and "animated .GIF of Twi Dryer & Bin from frame sequences" and creating and revising blade animation frames. "On-Site Graphics Support" consisted of 76.7 hours of "Onsite graphics with Haug team" from 3/29/17 through 4/5/17, with 10 hours of labor charged on most days.

As justification for taxation, Supernus relies upon this Court's decision in the Otsuka case, wherein the Court granted the costs of the physical production of visual aids. 2015 WL 5921049, at *9.

TWi's responds that FTI Consulting's charges are in fact "simply hourly fees for the 'intellectual efforts in designing demonstratives,' which are 'not taxable.'" Defs.' Br. at 14 (quoting Warner Chilcott Labs. Ireland Ltd., 2013 WL 1876441, at *17).

The juxtaposition of the physical preparation with the intellectual efforts was discussed in the Otsuka case after the Clerk's analysis along those lines in his January 24, 2013 decision in Eli Lilly & Co. v. Actavis Elizabeth LLC, Civ. No. 07-3770 [Dkt. Entry 759] ("the Clerk's Eli Lilly decision").

However, since the Clerk's Eli Lilly decision, he has denied the costs of visual aids for various reasons. The Supreme Court has warned recently that § 1920 must be narrowly construed, pointing out the "nontaxable expenses borne by litigants for . . . consultants," Taniguchi, 566 U.S. at 573, and vendors like FTI Consulting are exactly that, consultants. Warner Chilcott Labs. Ireland, Ltd., 2013 WL 1876441, at *17.

Since the Clerk's Eli Lilly decision, he has noted that a number of courts have denied the costs of visuals used to support counsel's arguments and the testimony of expert witnesses.

Prometheus Labs., 2016 WL 1559144, at *14 (citing cases, including one from another district court within the Third Circuit, Alzheimer's Inst. of Am., Inc. v. Avid Radiopharms., Civ No. 10-6908, 2016 WL 1161349, at *1-2 (E.D. Pa. Mar. 23, 2016)).

In the same vein, the Clerk recently denied the cost of demonstratives in consolidated Hatch-Waxman cases, quoting the observation in a well-respected treatise that a visual "may not qualify as 'exemplification' if it is essentially explanatory and argumentative, serving merely as an aid to the argument of counsel and the explanations of expert witnesses." Depomed, Inc., 2018 WL 999673, at *18 (quoting 10 James Wm. Moore et al., Moore's Federal Practice § 54.103[3][d] (3d ed. 2005)). The Clerk determined in the Depomed case that the prevailing party had not convinced him of the necessity of the visuals. Similarly, Supernus has not shown the necessity of the visual aids, which it has not even described beyond their labels of "graphics" and "demonstratives."

The Clerk is in the unenviable position of having to predict how the Third Circuit would define "exemplification" and apply that term within the meaning of § 1920. He takes direction from the appellate court's Race Tires decision which is arguably the most restrictive in the country on the taxation of ESI. The foregoing discussion would not even be reached if the Third Circuit were ultimately to adopt the strict construction of "exemplification" as "an official transcript of a public record, authenticated as a true copy for use as evidence," as defined in Black's Law Dictionary, rather than the broader construction of "act of illustration by example," as used by certain other circuit courts. With this in mind and for the reasons mentioned above, the Clerk would not expect the Third Circuit to find the requested costs taxable.

The Clerk's adoption of a conservative stance in the absence of binding Third Circuit precedent echoes the sentiment of a district court within the Eleventh Circuit:

Without persuasive guidance, and mindful of the general preference for narrow construction of the statute, the Court is unwilling to break new ground without new direction from the Eleventh Circuit. Accordingly, the Court holds that Defendants are not entitled to an award for the cost of graphics and technology consulting services.

Akanthos Capital Management, LLC v. CompuCredit Holdings Corp., 2 F. Supp. 3d 1306, 1312 (N.D. Ga. 2014).

Based upon the foregoing, the Clerk disallows all requested costs of visual aids.

As mentioned in the procedural history, the Court bifurcated the briefing of Plaintiff's pending attorney's fees motion, allowing the briefing on the amount of fees to follow the Court's ruling on liability. The Clerk noted in his Depomed opinion, 2018 WL 999673, at *19, that in the case of Avaya, Inc. v. Telecom, Inc., Civ. No. 06-2490, 2016 WL 10590071, at *40-41 (D.N.J. Sept. 15, 2016), trial consulting fees were analyzed within the then-prevailing party's attorney's fees motion, rather than its separate motion to tax costs. So in this case too, Supernus' costs of visuals may be more appropriately requested in its attorney's fees motion, should the Court rule in Plaintiff's favor on the liability aspect of that motion.

**Equipment Rental**

The final § 1920 (4) cost sought is Supernus' $1,724.31 share of the fees for renting multimedia equipment, such as monitors and projectors, for use in the courtroom during the trial. These charges include those for delivery, installation and pickup. Herstoff Decl. ¶ 14, Ex. 49.

The Court did not reach this issue in the Otsuka case, as the losing parties conceded this cost. 2015 WL 5921049, at *9. However, even though this cost is uncontested here, the Clerk attempts to apply § 1920 as he believes the Supreme Court and Third Circuit would.

For the reasons given in his Depomed opinion, 2018 WL 999673, at *18, and in his opinion in Purdue Pharm. Products v. Actavis Elizabeth LLC, Civ. No. 12-5311, 2016 WL

3450809, at *13 (D.N.J. June 20, 2016), he denies the costs of equipment rental. In a nutshell, as noted by the court in <u>Fowler v. California Highway Patrol</u>, "equipment rental fees are not properly taxed as costs because they are not, by their own terms, acts of copying or exemplification," and § 1920 must be strictly construed in light of recent Supreme Court and circuit court guidance. 13-cv-0102, 2014 WL 3965027, at *4 (N.D. Cal. Aug. 13, 2014).

Pursuant to § 1920 (4), the fees for exemplification and the costs of making copies are granted in the amount of **$4,016.55**.

## VII. <u>Compensation of Interpreters, § 1920 (6)</u>

The final entry on Supernus' bill of costs is for $1,920.00 (coincidentally) in interpreter fees, covering the translation of depositions of TWi's employees, Dr. Shou-Chiung Chen, James Chen and Yuting Huang, in Taiwan on June 28 and 30, 2016. Herstoff Decl. ¶ 16, Ex. 51.

Fees for the oral translation of depositions, like these, are taxable under § 1920 (6), <u>Taniguchi</u>, 566 U.S. at 560, and TWi does not oppose this cost. Also, L. Civ. R. 54.1(g) (2) provides that "[t]he reasonable fee of a competent interpreter is taxable if the fee of the witness involved is taxable."

However, L. Civ. R. 54.1(g) (2) caps fees by specifying that "[f]ees, salaries, expenses and costs of an interpreter are taxable as provided by 28 U.S.C. §§ 1827 and 1828." Section 1827 states that "[t]he Director [of the Administrative Office of the United States Courts] shall prescribe, subject to periodic review, a schedule of reasonable fees for services rendered by interpreters, certified or otherwise, used in proceedings instituted by the United States, . . ." 28 U.S.C. § 1827(b)(3).

Therefore, the Clerk refers to the fees established by the Administrative Office of the Courts ("AO") to determine these taxable costs. On the dates in question, the AO's rate for

a full day, or between four and eight hours, of services by a certified interpreter was $418.00. http://jnet.ao.dcn/about-ao/directors-office/2016-fees-contract-court-interpreters.  Therefore, the $960.00 rate charged for the eight hours of translation on each of the two days must be reduced to $418.00.  Pursuant to § 1920 (6), the "compensation of interpreters" in this case is taxed in the amount of **$836.00** ($418.00 x 2).

### VIII.  <u>Summary</u>

In sum, the Clerk taxes the following costs in favor of Supernus and against TWi:

| | |
|---|---|
| Fees of the clerk and marshal, § 1920 (1): | $    753.60 |
| Fees for transcripts, § 1920 (2): | $21,389.70 |
| Witness fees, § 1920 (3): | $ 5,187.35 |
| Fees for exemplification and copies, § 1920 (4): | $ 4,016.55 |
| Compensation of interpreters, § 1920 (6): | $    836.00 |
| **TOTAL:** | **$32,183.20** |

For the reasons set forth above, the motion of Plaintiff Supernus Pharmaceuticals, Inc. to tax costs against Defendants TWi Pharmaceuticals, Inc. and TWi International LLC is hereby **GRANTED IN PART AND DENIED IN PART.**  An appropriate order follows.

WILLIAM T. WALSH

By:  <u>S/John T. O'Brien</u>
        Deputy Clerk

May 9, 2018